JOHN MALLOY, D/B/A THE DOGWOOD GUN CLUB, PLAINTIFF V. ROY A. COOPER, III, ATTORNEY GENERAL FOR THE STATE OF NORTH CAROLINA; DAVID R. WATERS, DISTRICT ATTORNEY FOR THE 9TH PROSECUTORIAL DISTRICT; DAVID S. SMITH, SHERIFF OF GRANVILLE COUNTY; STATE OF NORTH CAROLINA, DEFENDANTS

No. COA00-898-2

(Filed 3 February 2004)

## Animals; Constitutional Law— vagueness—animal cruelty—domestic and feral pigeons

N.C.G.S. § 14-360 (an animal cruelty statute) was unconstitutionally void for vagueness as applied to plaintiff's contemplated shooting of feral pigeons because a person of ordinary intelligence would not be able to determine whether a particular pigeon was domestic or feral or whether shooting that pigeon violated the statute.

Appeal by plaintiff and defendants from order entered 9 May 2000 by Judge James C. Spencer, Jr. in the Granville County Superior Court. Heard in the Court of Appeals 7 June 2001; by decision filed 4 September 2001, the Court of Appeals reversed the superior court. *Malloy v. Easley*, 146 N.C. App. 66, 551 S.E.2d 911 (2001). Heard in the Supreme Court 15 April 2002; by decision 28 June 2002 the Supreme Court reversed and remanded to the Court of Appeals for decision on the merits. *Malloy v. Cooper*, 356 N.C. 113, 565 S.E.2d 76 (2002). Heard on remand by a panel of the Court of Appeals reconstituted per order 24 July 2002.

*Tharrington Smith, L.L.P., by Roger W. Smith; Greenberg Traurig, L.L.P., by C. Allen Foster, for plaintiff.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General John J. Aldridge, III, for defendants.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Cynthia L. Wittmer, on behalf of the North Carolina Network for Animals; Justice for Animals; the Fund for Animals, Inc.; and the Human Society of the United States, amici curiae.*

HUDSON, Judge.

In an order entered 9 May 2000, the trial court ruled in favor of John Malloy, d/b/a The Dogwood Gun Club ("plaintiff") in part and in favor of Roy A. Cooper, III, the Attorney General of the State of North

Carolina, David R. Waters, District Attorney for the 9th Prosecutorial District, David S. Smith, Sheriff of Granville County, and the State of North Carolina (collectively "defendants") in part. From that order, defendants appeal and plaintiff cross-appeals. On remand from the Supreme Court, because both the misdemeanor and felony provisions of the North Carolina cruelty to animals statute are unconstitutionally vague as applied to the facts of this case, we affirm the trial court in part and reverse in part.

I.

Background

On 3 March 1999, plaintiff filed a complaint seeking (1) an injunction enjoining defendants from enforcing G.S. § 14-360 against plaintiff, (2) a judgment declaring that G.S. § 14-360 violates plaintiff's substantive due process rights because its enforcement directly deprives him of his right to earn a livelihood through the lawful use of his land, and (3) judgment declaring that G.S. § 14-360 is unconstitutional because it is impermissibly vague. The factual background was summarized by the Supreme Court as follows.

Plaintiff is a resident of Granville County, North Carolina, and owns an unincorporated business operating under the name "Dogwood Gun Club." Twice a year plaintiff sponsors a pigeon shoot, known as "The Dogwood Invitational," on his private land in Granville County. Plaintiff has sponsored, organized, and operated the pigeon shoots since 1987. Contestants participate by invitation only, and each contestant pays $275.00 per day to participate. According to plaintiff's response to interrogatories, the pigeon shoot is conducted as follows: "Each contestant faces a ring. Inside the ring are a number of boxes which are opened on cue. An individual ferel [sic] pigeon flies from a particular box. The feral pigeon serves as a target at which the contestant shoots." The last two pigeon shoots conducted before institution of this action utilized approximately 40,000 pigeons each. Pigeons that are killed by the contestants are buried, whereas pigeons that are merely injured are "dispatched promptly" and buried. Plaintiff claims to have spent $500,000 in capital improvements to his land to further the pigeon shoots and further claims that the pigeon shoots provide approximately fifty percent of his net income.

*Malloy v. Cooper*, 356 N.C. 113, 114, 565 S.E.2d 76, 77 (2002).

On 11 March 1999, the trial court allowed plaintiff's motion for a preliminary injunction to prevent defendants from prosecuting plaintiff for cruelty to animals under G.S. § 14-360, until resolution on the merits of plaintiff's declaratory judgment action.

In the order entered 9 May 2000, the trial court addressed defendants' motion to dismiss and motion for summary judgment and for dissolution of the preliminary injunction. First, the trial court denied the motion to dismiss, noting that "the plaintiff will not be able to conduct the 'Flyer' or pigeon shoot which has provided him with income unless he and those persons who participated are willing to subject themselves to criminal prosecution. For those reasons, the [trial court] does have jurisdiction to hear the case."

Second, the trial court declared subsection (a) unconstitutional, stating the following: "The portion of the statute declaring the commission of a Class 1 misdemeanor by any person who <u>wounds</u>, <u>injures</u> or <u>kills</u> any living vertebrate animal of the designated classes . . . is too vague and over broad and therefore fails to comply with constitutional due process standards of certainty." Next, the trial court declared the felony provisions of the statute constitutional, stating that "[t]he remaining [felony] portions of the statute, while perhaps not models of drafting clarity, are not sufficiently deficient as to fail to meet constitutional due process standards." Finally, the trial court issued a permanent injunction to prevent defendants from prosecuting plaintiff under the misdemeanor provisions of G.S. § 14-360(a), and dissolved the preliminary injunction preventing defendants from prosecuting plaintiff for a felony under G.S. § 14-360(b).

On appeal, defendants argued that the trial court's denial of their motion to dismiss for lack of subject matter jurisdiction was error. In our first decision, we agreed, holding that plaintiff's allegations were not sufficient to confer subject matter jurisdiction pursuant to the Declaratory Judgment Act, G.S. § 1-253 to -267 (1999). *Malloy v. Easley*, 146 N.C. App. 66, 69, 551 S.E.2d 911, 913 (2001), *rev'd sub nom.*, 356 N.C. 113, 565 S.E.2d 76 (2002). We held that, while plaintiff was threatened with prosecution if he held another pigeon shoot, factual issues remained that would determine whether plaintiff violated the statute. *Id.* Plaintiff petitioned the North Carolina Supreme Court for discretionary review, which was allowed. The Supreme Court reversed, holding plaintiff's allegations that an "imminent prosecution" would interfere with his right to use his property to earn a living were sufficient to confer subject matter jurisdiction and that the trial court properly denied the motion to dismiss. *Malloy*, 356 N.C. at

120, 565 S.E.2d at 81. The Supreme Court remanded the case to us "for [a] decision on the merits of the underlying action." *Id.*

## II.

### Analysis

Plaintiff alleges that all of G.S. § 14-360 is unconstitutional due to vagueness. Upon such a challenge to a statute, we are bound to indulge every presumption in favor of the constitutionality of the statute. *State v. Matthews*, 270 N.C. 35, 43, 153 S.E.2d 791, 797 (1967).

The United States Supreme Court and the North Carolina Supreme Court have adopted similar tests for determining whether a statute is unconstitutionally vague. *State v. Green*, 348 N.C. 588, 597, 502 S.E.2d 819, 824 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999). "[A] statute is unconstitutionally vague if it either: (1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for those who apply [the law].' " *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227 (1972)). Although a statute must satisfy both prongs of this test, "impossible standards of statutory clarity are not required by the constitution." *In re Burrus*, 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969), *affirmed*, 403 U.S. 528, 29 L. Ed. 2d 647 (1971). As long as a "statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met." *Id.*

" 'It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " *State v. Barker*, 138 N.C. App. 304, 306, 531 S.E.2d 228, 229 (2000) (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713 (1975)). Here, plaintiff does not contend that enforcement of the cruelty to animals statute impinges on his protected First Amendment rights, and thus we undertake our review of this case only upon the facts as presented in the materials before the trial court. Thus, we address the constitutionality of G.S. § 14-360, as applied to the plaintiff's proposed pigeon shoot.

G.S. § 14-360 provides:

(a) If any person shall intentionally overdrive, overload, wound, injure, torment, kill, or deprive of necessary sustenance,

MALLOY v. COOPER

[162 N.C. App. 504 (2004)]

or cause or procure to be overdriven, overloaded, wounded, injured, tormented, killed, or deprived of necessary sustenance, any animal, every such offender shall for every such offense be guilty of a Class 1 misdemeanor.

(b) If any person shall maliciously torture, mutilate, maim, cruelly beat, disfigure, poison, or kill, or cause or procure to be tortured, mutilated, maimed, cruelly beaten, disfigured, poisoned, or killed, any animal, every such offender shall for every such offense be guilty of a Class I felony. However, nothing in this section shall be construed to increase the penalty for cockfighting provided for in G.S. 14-362.

(c) As used in this section, the words "torture", "torment", and "cruelly" include or refer to any act, omission, or neglect causing or permitting unjustifiable pain, suffering, or death. As used in this section, the word "intentionally" refers to an act committed knowingly and without justifiable excuse, while the word "maliciously" means an act committed intentionally and with malice or bad motive. As used in this section, the term "animal" includes every living vertebrate in the classes Amphibia, Reptilia, Aves, and Mammalia except human beings. However, this section shall not apply to the following activities:

(1) The lawful taking of animals under the jurisdiction and regulation of the Wildlife Resources Commission, except that this section shall apply to those birds exempted by the Wildlife Resources Commission from its definition of "wild birds" pursuant to G.S. 113-129(15a).

(2) Lawful activities conducted for purposes of biomedical research or training or for purposes of production of livestock, poultry, or aquatic species.

(2a) Lawful activities conducted for the primary purpose of providing food for human or animal consumption.

(3) Activities conducted for lawful veterinary purposes.

(4) The lawful destruction of any animal for the purposes of protecting the public, other animals, property, or the public health.

G.S. § 14-360 (2001).

Plaintiff first contends that it is unclear whether the cruelty to animals statute even applies to his proposed pigeon shoot. Specifically, plaintiff argues that the statute is vague in that it exempts "[t]he lawful taking of animals under the jurisdiction and regulation of the Wildlife Resources Commission, except that [the statute] shall apply to those birds exempted . . . from [the] definition of 'wild birds' pursuant to G.S. 113-129(15a)." G.S. § 14-360(c)(1).

Under the authority granted to it under G.S. § 113-129(15a), the Wildlife Resources Commission ("WRC") has exempted from its jurisdiction and regulation "the domestic pigeon (Columba livia)." N.C. Admin. Code tit. 15A, r. 10B.0121 (July 2003). Plaintiff argues that it is unclear whether the exemption for domestic pigeons applies to feral pigeons, which are also designated *Columba livia*. *Webster's New Collegiate Dictionary* provides several definitions for "feral" including: "wild animal" and "having escaped from domestication and become wild." *Webster's New Collegiate Dictionary* 456 (9th ed. 1991).

Defendants argue that the term "domestic pigeon" as used in the WRC regulation, includes feral and wild pigeons, as well as those commonly referred to as domestic pigeons, and have submitted an affidavit from David Cobb, a Ph.D. wildlife biologist, to support this argument. We are not persuaded of the merit of this argument.

The forecast of evidence, including the expert affidavits and other materials, reveals that although pigeons may be denominated as either "domestic" or "feral", the two categories are genetically identical. The domestic pigeon was introduced into the United States as a domesticated bird and used as a passenger and homing bird, as well as for other purposes. Feral pigeons descend from domestic pigeons that escaped captivity and have now returned to a wild state and exhibit feral characteristics due to different degrees of human control and habitation. A plain reading of the regulation exempting "domestic pigeons (Columba livia)" from the definition of "wild birds" indicates the WRC intended to exclude only domestic pigeons of the species *Columba livia* and not their wild, or feral, brethren. Under this reading, feral pigeons remain under the jurisdiction and regulation of the WRC, and are exempt from the cruelty to animals statute, while domestic pigeons are not.

The Cobb affidavit and others indicate that, while people commonly refer to pigeons as domestic and feral, the two groups are in

fact not distinct. According to the affidavits, domestic and feral pigeons are genetically identical, and indistinguishable to the layperson in any other way. Dr. Cobb explains this láck of distinction as follows:

9. There have been no genetic differences shown between domestic and feral pigeons. With current genetic techniques, we can now differentiate between any two individuals ,within Columba livia, whether wild, feral or domestic, but we cannot distinguish individuals genetically regarding to which of the three forms the individual belongs. . . .[W]ild, feral and domestic pigeons are genetically the same and do not constitute three distinct types.

\*\*\*

16. There is no scientifically accepted use of *common names* with scientific names. Scientists do not use common names because of just the type of confusion exemplified in this case.

Legislators and the general public, however, *do* use common names and can become confused. We do not believe that a person of ordinary intelligence, without such scientific background, would be able to determine whether a particular pigeon is domestic or feral, or to determine whether shooting that pigeon is a violation of the statute. Had the WRC intended to use the term "domestic pigeon" to include wild and feral pigeons as well, it certainly could have done so, but it did not.

The statute and regulation as written fail to give a person a reasonable opportunity to know whether shooting particular pigeons is prohibited, and fails to provide standards for those applying the law, as required by the North Carolina Supreme Court and United States Supreme Court. "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy*, 372 U.S. 29, 32-33, 9 L. Ed. 561, 565, *reh'g denied*, 372 U.S. 961, 10 L. Ed. 2d 13 (1963); *see also, State v. Martin*, 7 N.C. App. 532, 173 S.E.2d 47 (1970) (Regulation making it unlawful to "snag" a fish held unconstitutionally void for vagueness because usage common among fisherman could not necessarily be understood by judges with the duty to apply it). Therefore, we hold that G.S. § 14-360, in its entirety, is unconstitutionally void for vagueness, as applied to plaintiff's contemplated pigeon shoot.

Thus, we remand for entry of an order which allows plaintiff's motion for summary judgment as to both G.S. § 14-360(a) and (b), and which permanently enjoins the defendants from enforcement of those provisions against the plaintiff.

Affirmed in part; reversed in part.

Judges MARTIN and HUNTER concur.