PRESENT: All the Justices

THOMAS LONG NORTHAM

OPINION BY
v. Record No. 121623            JUSTICE LEROY F. MILLETTE, JR.
                                      FEBRUARY 28, 2013
VIRGINIA STATE BAR

FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

In this appeal of right from an order entered by the Virginia State Bar Disciplinary Board (Board), we consider whether an attorney violated Rule 1.10(a) of the Virginia Rules of Professional Conduct.

I.    Background

Thomas Long Northam is an attorney licensed to practice law in Virginia.  During the relevant time period, Northam was a partner in Poulson, Northam & Lewis, PLC (the Firm) in Accomac, Virginia.  On April 7, 2010, Laura Ashley Adams (Ms. Adams) visited the Firm with the intention of employing Lynwood W. Lewis, Jr., (Lewis) as her attorney to represent her regarding matters of custody, support, separation, and divorce from her husband, Thomas James Adams (Mr. Adams).  The Firm's receptionist arranged for an initial meeting between Ms. Adams and Lewis to be held on April 13, 2010.

On April 9, 2010, Northam, Lewis's partner, received a phone call from Mr. Adams.  Mr. Adams indicated that he was seeking representation for a "domestic situation," which he

described in some detail. Northam told Mr. Adams to "tell [him] when he got served and [they] would go from there."

When Ms. Adams returned to the Firm on April 13, 2010, she met with Lewis, recounted the events leading up to the separation, and informed him of her goals in the divorce proceedings. Lewis took approximately one page of notes during this initial interview before asking if Ms. Adams knew if Mr. Adams had retained an attorney. Ms. Adams answered that he had, and his name was "Northam something." Lewis stopped taking notes and terminated the interview.

The following day, Lewis spoke with Northam to inquire about Northam's alleged representation of Mr. Adams and to inform Northam that he had met with Ms. Adams. Following this conversation, the Firm's receptionist notified Ms. Adams that Lewis would not be able to represent her in her dispute with Mr. Adams. The receptionist told Ms. Adams that Lewis could not serve as her attorney because Lewis's partner, Northam, had already agreed to represent Mr. Adams in the matter. Ms. Adams sought alternative legal representation. Northam continued to represent Mr. Adams.

Ms. Adams filed a complaint with the Virginia State Bar (Bar). After receiving the complaint and conducting an initial investigation, the Second District Committee of the Bar (District Committee) charged Northam with violations of Rules

2

1.7(a)(2) (Conflict of Interest), 1.10(a) (Imputed Disqualification), and 1.16(a)(1) (Declining or Terminating Representation) of the Rules of Professional Conduct. At the conclusion of a hearing before the District Committee, Northam was held to have violated Rules 1.7(a)(2), 1.10(a), and 1.16(a)(1), and the District Committee ordered a public admonition, with terms.

Northam appealed the decision to the Board. The Board reversed and dismissed the District Committee's determination that Northam had violated Rules 1.7(a)(2) and 1.16(a)(1), and affirmed the determination that Northam had violated Rule 1.10(a). The Board ordered an admonition, without terms.

Northam made a timely appeal to this Court, assigning three errors to the decision of the Board:

1)    The Disciplinary Board erred when it failed to find that the District Committee misinterpreted and misapplied Rule 1.10 because Rule 1.10 is not a strict liability rule of professional conduct and instead requires that Respondent have knowledge that his partner could not ethically represent Appellant's client before imputing the partner's knowledge to [the] Appellant.

2)    The Disciplinary Board erred because there was no finding of fact by the District Committee that Appellant knew that his partner had a conflict of interest and was prohibited from representing Appellant's client.

3)    The Disciplinary Board improperly upheld the District Committee's error as a matter of

law in limiting Appellant's right to examine Ms. Adams' attorney after Ms. Adams had already testified as to her version of communications with her attorney on the same subject.[*]

## II. Discussion

### A. Standard of Review

In reviewing the Board's decision in a disciplinary proceeding, the factual conclusions reached by the Board will

---

[*] We note that the language of the three assignments of error recited above and presented in the appellant's opening brief varies slightly from that appearing in the five assignments of error presented in the notice of appeal originally filed with the Disciplinary Board on August 31, 2012. It is well established that the Court will not consider assignments of error as modified by an appellant's opening brief, but only as granted by the Court. White v. Commonwealth, 267 Va. 96, 102-03, 591 S.E.2d 662, 665-66 (2004). Even so, we have previously held that "[w]hile it is improper for an appellant to alter the wording of a [granted] assignment of error . . . non-substantive changes to an assignment of error . . . do not default the issue raised." Dowdy v. Commonwealth, 278 Va. 577, 590 n.14, 686 S.E.2d 710, 717 n.14 (2009) (citing Allstate Ins. Co. v. Gauthier, 273 Va. 416, 418, 641 S.E.2d 101 n.* (2007)). Because the changes involved here are non-substantive (substituting "Appellant's" for "Respondent's" and "Appellant" for "Respondent" in a few locations), and do not permit the appellant to argue a different issue on appeal, we may properly consider the modified assignments of error. Id.; see also Hudson v. Pillow, 261 Va. 296, 301-02, 541 S.E.2d 556, 560 (2001) (same). In addition, while the two assignments of error filed but not appearing in this brief under the heading "Assignments of Error" are waived, Dowdy, 278 Va. at 590 n.14, 686 S.E.2d at 717 n.14 (citing Rules 5:27 and 5:17(c)), we can nevertheless "reach the underlying issues raised in omitted assignments of error because [another] assignment of error encompasses the same issues and because [the appellant] briefed those issues." See id. Thus, to the extent that issues pertaining to appellant's omitted assignments of error are encompassed by the presented assignments of error and are sufficiently briefed, we may properly consider them.

4

be given "substantial weight and [we] view those findings as prima facie correct."  Pilli v. Virginia State Bar, 269 Va. 391, 396, 611 S.E.2d 389, 391 (2005).  These conclusions, "[w]hile not given the weight of a jury verdict, . . . will be sustained unless they are not justified by the evidence or are contrary to law."  Barrett v. Virginia State Bar, 277 Va. 412, 413, 675 S.E.2d 827, 828 (2009).  In conducting this review, we will conduct "an independent examination of the entire record[, viewing] all reasonable inferences that may be drawn from th[e] evidence" in the light most favorable to the prevailing party.  Green v. Virginia State Bar, 278 Va. 162, 171, 677 S.E.2d 227, 231 (2009).

### B.    Whether Northam Had Knowledge of Lewis's Disqualification

Under Rule 1.10(a), "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e)."  (Emphasis added.)

Northam does not dispute that Lewis, his partner, was prohibited from representing Mr. Adams under Rules 1.6(a) and 1.7(a)(2).  Rule 1.6(a) prohibits a lawyer from revealing "information protected by the attorney-client privilege under applicable law or other information gained in the professional relationship that the client has requested be held inviolate or

5

the disclosure of which would be embarrassing or would be likely to be detrimental to the client."  Rule 1.7(a)(2) prohibits a lawyer from representing "a client if the representation involves a concurrent conflict of interest[, which] exists if . . . there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person."  Lewis's disqualification under Rules 1.6(a) and 1.7(a)(2) from representing Mr. Adams was established by clear and convincing evidence and is not questioned by Northam on appeal.

Rather, Northam argues that the Board erred when it imputed Lewis's disqualification to him under Rule 1.10(a) without any evidence to support the conclusion Northam knew that the Rules of Professional Conduct prohibited Lewis from representing Mr. Adams.  Northam contends that, because no evidence was presented to establish his knowledge of Lewis's disqualification under either Rule 1.6(a) or 1.7(a)(2), the Bar's determination that he violated Rule 1.10(a) could only be based on an application of strict liability to the Rule's requirements.

Additionally, Northam argues, because Rule 1.10(a) is not a strict liability rule, the Rule's requirement that the conduct be executed "knowingly" is essential to sustaining a

6

violation. This requires a finding of fact establishing Northam's actual knowledge that Lewis was disqualified from representing Mr. Adams, thus imputing Lewis's disqualification to Northam.

The Bar responds that the Board did not apply strict liability when it determined that Northam violated Rule 1.10(a). According to the Bar, the conflict in representing Mr. Adams because of Lewis's receipt of confidential information from Ms. Adams was imputed to all of Lewis's law partners, including Northam. The Bar relies upon Comment [2] to Rule 1.10 that "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client." Thus, by imputing Lewis's knowledge that he had a conflict under Rules 1.6(a) and 1.7(a)(2) to Northam, Northam "knowingly" represented a client, Mr. Adams, who Lewis was prohibited from representing.

The Bar further contends that the Board based its conclusion on facts that allowed the Board to infer, based on the circumstances, that Northam knew Lewis was prohibited from representing Mr. Adams. The Bar argues that it did not err in imputing Lewis's disqualification to Northam because the only reasonable inference to draw from the Board's finding that Lewis "met" with Ms. Adams is that the meeting was for the purpose of representing her in legal proceedings involving her

domestic dispute with Mr. Adams.  Thus, the Bar contends that the factual finding that Lewis and Ms. Adams met was sufficient to impute Lewis's knowledge of his disqualification to Northam.

Rule 1.10(a) is not a rule of strict liability.  The use of "knowingly" in Rule 1.10(a) is not without purpose, but is a separate and distinct element of the Rule that must be proven before a violation can be imposed.  Northam must have had knowledge at the time he represented Mr. Adams that Lewis, his partner, was prohibited from doing so.

"Knowingly" is defined in Part 6 of the Rules of Court, Section II, Preamble, as "actual knowledge of the fact in question" and as encompassing knowledge that "may be inferred from the circumstances."  Based on this definition, we agree with the Bar that the Board may in appropriate circumstances infer knowledge of a partner's disqualification from the circumstances of a particular case.  We do not agree, however, that the findings of fact made upon the Board's review of the entire record, including the District Committee's findings of fact, support the Bar's argument that Northam had actual knowledge of Lewis's disqualification.

We have previously refused to affirm findings that an attorney violated the Rules of Professional Conduct "because the Board's 'Findings of Fact' d[id] not prove the ethical misconduct charged by clear and convincing evidence."  Pappas

v. Virginia State Bar, 271 Va. 580, 587, 628 S.E.2d 534, 538 (2006); see also Rice v. Virginia State Bar, 267 Va. 299, 300-01, 592 S.E.2d 643, 644-45 (2004).

The findings of fact included in the Board's disposition in the present matter state:

> 2. There is substantial evidence to sustain a violation of Rule 1.10 (Imputed Disqualification). The confidential information Ms. Adams provided to Respondent's partner, Lewis, was imputed to Respondent. Respondent learned of his partner's meeting with Ms. Adams wherein she intended to engage his partner to represent her in a divorce, child custody and support matter, and her disclosure to Lewis of relevant confidential information was imputed to him. Based on the confidential information Ms. Adams provided to Lewis, Lewis could not have represented Mr. Adams had Mr. Adams later sought his representation in the divorce. Lewis's meeting with Ms. Adams without first determining whether there was any conflict that would bar his representation of Ms. Adams had the effect of disqualifying Respondent from likewise representing Mr. Adams because of what Lewis had learned from Ms. Adams was imputed to Respondent. Respondent continued to represent Mr. Adams without requesting and obtaining an informed consent from Ms. Adams permitting his continued representation of her husband.

(Emphasis added.)

The finding that "Respondent learned of his partner's meeting with Ms. Adams" does not in itself support the conclusion that Northam knew that Lewis was disqualified from representing Mr. Adams in that Ms. Adams revealed information

9

to Lewis that falls under the protection of Rule 1.6(a), or that Lewis's ability to represent Mr. Adams would have been "materially limited by [Lewis's] responsibilities" to Ms. Adams under Rule 1.7(a)(2).  The Board's findings of fact leave out the crucial connection between Northam's knowledge of a meeting between Lewis and Ms. Adams and the inference that Northam "knew" of Lewis's disqualification.

The Bar argues that a review of the record in its entirety supports the inference that Northam knew Lewis declined to represent Ms. Adams because he was disqualified from representing either party.  During the hearing before the District Committee, which the Board reviewed in its entirety, Lewis testified that he told Northam of his meeting with Ms. Adams and, after learning that Northam was representing Mr. Adams, stated "I think we have a problem and I'm getting out." Northam, however, testified before the District Committee as follows:

> Q. Did he ever tell you that . . . he had a meeting with Ms. Adams?
>
> A. [I w]as contacted, I recalled.  So, obviously, I knew [Lewis] had been contacted somehow by [Ms. Adams] because he wouldn't have asked the question unless there had been contact, but he didn't go into the details.
>
> Q. But he didn't tell you that he had [previously] had a meeting, in-office consultation with her?
>         A. No.

10

. . . .

Q. You heard your partner's testimony about that discussion he had with you following this meeting with Ms. Adams, and he said . . . something to the effect of either I've got a problem or we've got a problem and I've got to get out. Do you recall whether he said I or we?

A. The conversation concluded with my indicating that I was representing Mr. Adams. If he had indicated that we had a problem, I would have asked more questions, but that was not done. That would have given me some indication that I have to follow up on something and ask something else, but when I indicated that I was representing Mr. Adams, that concluded the very brief encounter and he left my office.

The District Committee could have resolved the factual inconsistency between the testimony of Lewis and that of Northam, or found that the context of the meetings or some other basis resulted in the inference that Northam knew about Lewis's disqualification, but it did not do so in its findings of fact. The District Committee's findings include:

4. On April 13, 2010, Ms. Adams returned to Respondent's firm and met with Mr. Lewis with the intention of hiring him to represent her in divorce, child custody and support matters. Ms. Adams provided Mr. Lewis with confidential information related to her marriage to Mr. Adams and the events leading to their separation, including Mr. Adams' alleged anger management issues and adultery. Ms. Adams shared with Mr. Lewis information not known to Mr. Adams, specifically, that Ms. Adams had proof of Mr. Adams' alleged adultery.

11

.  .  .  .

> 6. On April 14, 2010, <u>Respondent told Mr. Lewis</u>
> <u>that he was representing Mr. Adams and Mr.</u>
> <u>Lewis told Respondent that he had met with</u>
> <u>Respondent the day prior</u>.

(Emphasis added.)

The District Committee's findings establish only that Lewis and Ms. Adams met, that Ms. Adams disclosed confidential information to Lewis during their meeting, and that Lewis subsequently communicated to Northam that he met with Ms. Adams.  While the Board could have concluded in its findings of fact that Northam had actual knowledge of Lewis's disqualification, or that such actual knowledge was inferred from the circumstances, that finding was not made.  Because of the different possible conclusions that could be derived from the evidence, we decline to draw a conclusion or inference that the Board did not.

This analysis is wholly consistent with our holdings in <u>Pappas</u> and <u>Rice</u>.  Although in both <u>Pappas</u> and <u>Rice</u> we ultimately found the evidence insufficient to support the Board's finding by clear and convincing evidence, these holdings must be viewed in the context of the basis for the results.

In <u>Pappas</u>, we concluded that only one of the Board's findings of fact could have been the basis for sustaining a

12

violation of Rule 8.4(c).  271 Va. at 588, 628 S.E.2d at 539. That finding considered conflicts in testimony between the respondent attorney and other witnesses considered by the Board.  We held that "this one finding is not sufficient to support the Board's determination that Pappas" violated Rule 8.4(c) because he "engaged 'in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on [Pappas'] fitness to practice law' by clear and convincing evidence."  Id. at 588, 628 S.E.2d at 538-39.

The facts in Rice involved an alleged violation of Rule 8.1(c), which provides that an attorney "shall not fail to respond to a lawful demand for information from [a] disciplinary authority."  267 Va. at 300, 592 S.E.2d at 644. We recognized that, "[w]hile Rule 8.1(c) may be violated by failure to appear at a hearing before a disciplinary committee or Board, in this case, the Disciplinary Board's findings of fact do not support its conclusion that Rice violated the rule."  Id.  We explained that a summons to appear at a hearing may be considered a demand for information under Rule 8.1(c) if the Board finds that the hearing was for the purpose of gathering sworn testimony from the respondent, but because the Board failed to include a finding that the "committee was unable to gather information from Rice as a result of Rice's failure to appear," its determination was "by clear and

13

convincing evidence unsubstantiated." Id. at 301, 592 S.E.2d at 644-45.

Neither Pappas nor Rice contains any discussion of the record beyond the explication of the Board's insufficient findings of fact. Both cases involved findings of fact that provided insufficient bases for the Board's conclusions that the respective rules were violated by clear and convincing evidence. The Board is delegated with the responsibility to resolve often complex and detailed disputed fact situations that may or may not constitute violations of professional responsibility. See Va. Sup. Ct. R., Part 6, § IV, ¶13-19(E). An attorney charged with a violation of professional responsibility is entitled to findings of fact that contain a clear statement of how the Board resolved disputed issues.

In the present case, the issue in dispute was whether Northam continued representing Mr. Adams when he "knew" that Lewis, his partner, was disqualified. Nothing in the Board's findings of fact resolves this issue. The Board was not required to establish that Northam knew why Lewis was disqualified, but the Board was required by the language of the Rule to establish by clear and convincing evidence that Northam's continued representation of Mr. Adams was with the knowledge that Lewis was disqualified from said representation. Had the Board made this determination, we would have reviewed

14

the entire record for reasonable inferences in support of its determination, and viewed conflicts in the evidence in the light most favorable to the Bar as the prevailing party. But lacking any factual determination by the Board as to Northam's knowledge of disqualification, we will not inspect the record to determine facts required to establish a violation of the rule.

We therefore hold, based on the Board's findings of fact, that under the specific circumstances of this case we cannot affirm the Board's conclusion that Northam knew that Lewis was disqualified from representing Mr. Adams. Without this element of knowledge, a material element of Rule 1.10(a), we will not impute Lewis's disqualification to Northam and the order of the Board will be reversed.

## C.    Waiver of Attorney-Client Privilege

Northam also argues that the Board erred in upholding the District Committee's decision that permitted Ms. Adams' attorney to limit his testimony before the District Committee by exercising attorney-client privilege. We will not reach this Assignment of Error because our disposition as to Assignments of Error One and Two is dispositive.

## III. Conclusion

The Board's findings of fact do not support its conclusion by clear and convincing evidence that Northam knowingly

15

represented Mr. Adams when Lewis, his partner, was prohibited from doing so under the Virginia Rules of Professional Conduct. Therefore, Lewis's disqualification could not be imputed to Northam under Rule 1.10(a).  We will reverse the order of the Board and dismiss the charge of misconduct.

<u>Reversed, vacated, and dismissed.</u>

JUSTICE POWELL, dissenting.

The majority holds that there is not enough evidence in the record for us to conclude that Northam knew that Lewis was disqualified from representing Mr. Adams.  I respectfully disagree with the majority's conclusion that the factual findings of the Board were insufficient.  Because the majority holds that the evidence is insufficient, it does not reach the issue of whether the trial court improperly excluded portions of Dix's testimony.  I would further hold that any error in excluding the testimony of Ms. Adams' counsel, Thomas B. Dix, Jr., was harmless.  Therefore, I would affirm the decision of the Virginia State Bar Disciplinary Committee.

A. Violation of Rule 1.10

The review of the entirety of the record shows that Ms. Adams met with Lewis to retain him to represent her in a divorce proceeding.  While meeting with Lewis, she told him about evidence that she had that could be detrimental to Mr.

Adams.  After she told Lewis that evidence, he asked who was representing Mr. Adams.  Ms. Adams responded "I believe it was a Northam something. . . .  I don't know offhand."  Lewis asked her "[i]s it a Tommy Northam?" and Ms. Adams stated "that sounds about right."  At that point, Lewis informed her that he could not talk with her any longer until he "check[ed] notes and [saw] if [Mr. Adams] had spoken with Mr. Northam."  Lewis immediately exited his meeting with Ms. Adams and asked Northam's secretary whether Northam had spoken with Mr. Adams.  When the secretary indicated that Northam had, Lewis knew that he could not represent Ms. Adams.  The next day, Lewis told Northam that he had interviewed Ms. Adams and Northam indicated that he was representing Mr. Adams.  Lewis told Northam "I think we have or I have or I think we have a problem and I'm getting out."  Lewis did not reveal anything that Ms. Adams told him to Northam or anyone.  Northam told the Bar investigator that he did not withdraw because he did not believe that there was a conflict as he did not know any details about Lewis's meeting with Ms. Adams and because he felt that he had a duty to his client and the court to not withdraw.

The Virginia Rules of Professional Conduct prohibit an attorney from representing a client if that representation involves a concurrent conflict of interest.  Rule 1.7(a).  The

17

Rule further states that a concurrent conflict of interest exists where "the representation of one client will be directly adverse to another client" or "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Rule 1.7(b) This conflict may be waived by the written consent of all involved clients, if certain conditions are met. Id. "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by" Rule 1.7, among others. Rule 1.10(a).

Here, it is clear that no attorney-client relationship had formed between Ms. Adams and Lewis, but I believe that the expectation of privacy did because Lewis did not provide a disclaimer about confidentiality and Ms. Adams shared information that she believed would be detrimental to her in the divorce proceeding were Mr. Adams to know that she possessed such information.

The majority concludes that because the Disciplinary Board did not make a specific factual finding as to whether Lewis communicated to Northam that he had a conflict or whether he only stated that he met with Ms. Adams, the evidence is insufficient to conclude that Northam knew that a conflict

prevented Lewis from representing Mr. Adams.  This narrow view, however, results in a reinterpretation of the law.  Under this perspective, the majority is either saying 1) that this Court relies only on the specific factual findings made by the District Committee and no longer reviews the entire record for reasonable inferences, or 2) this Court continues to review the entire record but resolves conflicts in the evidence in favor of the losing party rather than the party that prevailed below. We have previously held that

> we conduct an independent examination of the record, considering the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party below, and we give the factual findings . . . substantial weight, viewing them as prima facie correct.

Barrett v. Virginia State Bar, 272 Va. 260, 268-69, 634 S.E.2d 341, 345-46 (2006)(emphasis added).  Our review of the record is not only to determine whether the inferences support each specific factual finding made by the Board, but is conducted to determine whether the evidence in the record and all the reasonable inferences drawn from that evidence support the result.  Thus, either interpretation of the majority's position is a radical departure from the law.

In support of their position, the majority relies upon, Pappas v. Virginia State Bar, 271 Va. 580, 628 S.E.2d 534 (2006), and Rice v. Virginia State Bar, 267 Va. 299, 592 S.E.2d

19

643 (2004), two cases in which the record simply did not contain the evidence to support the findings or reasonable inferences therefrom.  See Pappas , 271 Va. at 588-89, 628 S.E.2d at 539 ("the evidence was insufficient to find by clear and convincing evidence that [the attorney] violated [the] Rule"); Rice, 267 Va. at 301, 592 S.E.2d at 644-45 ("the Disciplinary  Board's determination that the Bar proved a violation of Rule 8.1(c) by clear and convincing evidence is unsubstantiated").  By contrast, upon reviewing the entire record in the present case, I believe that there is sufficient evidence from which the District Committee and Disciplinary Board could have concluded that Northam knew that a conflict prevented Lewis from representing either Laura or Thomas Adams. Therefore, the facts of this case are clearly distinguishable. Here, the testimony of Lewis, Northam, and Ms. Adams is sufficient to establish that she told Lewis confidential information about what she knew about Mr. Adams' alleged affair, Lewis told Northam that he (Lewis) had met with Ms. Adams and believed that either he (Lewis) or both of them had a problem.  Thus, based on what he learned, Lewis would have a concurrent conflict and could not represent Mr. Adams.  Because Lewis and Northam were members of the same firm at that time, this conflict was imputed to Northam even though Northam was already representing Mr. Adams.  See Rule 1.10.  In light of

20

the clear inferences to be drawn from the record, the fact that the Bar did not make this specific factual finding is too thin a reed upon which to decide this case. Therefore, I would affirm the Bar's admonition without terms.

B. Admissibility of Testimony from Wife's Attorney

Because I believe that the evidence was sufficient and would affirm the Bar as to Northam's first four assignments of error, I would also reach his fifth assignment of error: "The Disciplinary Board improperly upheld the District Committee's error as a matter of law in limiting appellant's right to examine [Ms. Adams'] attorney after [Ms. Adams] had already testified as to her version of communications with her attorney."

During direct examination, Northam asked Dix, who represented Ms. Adams in the divorce proceedings and in proceedings related to Northam's representation of Mr. Adams, whether he had any discussions with Ms. Adams leading up to the mediation about Northam representing Mr. Adams. Dix declined to answer on the grounds that the information was subject to attorney-client privilege. Northam argued that Dix cannot now assert the privilege because Ms. Adams testified about her complaint against Northam and made representations about what Dix did or did not tell her, thus putting those matters in issue, and that it was up to Ms. Adams to assert the privilege.

Northam argued that Ms. Adams "opened the door" because her testimony materially relied on conversations between herself and Dix.  He maintained that this was the classic "sword and shield" situation, contending that permitting Dix to rely on the privilege as a basis to refuse to testify was "using the privilege as a shield" and was "not fair" given Ms. Adams' prior use of the privilege as a "sword" in her effort to establish a violation of the Rules.  When Ms. Adams was asked if she would waive the privilege to allow Dix to testify, she stated that if he did not want to answer it, she was not going to waive the privilege.  The committee ruled that Dix did not have to answer.  Dix then testified that before the mediation, he did not tell any third parties that Ms. Adams did not want Northam to represent Mr. Adams.

"Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result."  Forbes v. Rapp, 269 Va. 374, 382, 611 S.E.2d 592, 597 (2005).  While the District Committee ruled that Dix did not have to testify, he testified with regard to every point covered with Ms. Adams on cross-examination.  Therefore, all of the evidence that related to statements made by Ms. Adams was covered in cross-examination of Dix.  Thus, the Committee's ruling did not affect the result.

Northam also sought to elicit testimony about Ms. Adams' purpose for speaking with Lewis.  Ms. Adams, however, did not testify as to why she sought to retain Lewis as her attorney.  Therefore, she did not waive the attorney-client privilege as to this topic and I would hold that the Bar did not err in not allowing Dix to testify on this subject.

Thus, I believe there is sufficient evidence in the record to show that Northam violated Rule 1.10.  I would further hold that the Bar did not err in not allowing Dix to testify about why Ms. Adams sought to retain Lewis, and to the extent the Bar erred in not admitting testimony from Dix, that error was harmless.  Therefore, I would affirm Northam's admonition without terms for violating Rule 1.10.